SCOTT C. CLARKSON, ESQ. SBN 143271
EVE A. MARSELLA, ESQ. SBN 165797
CHRISTINE M. FITZGERALD, ESQ. SBN 259014
CLARKSON, GORE & MARSELLA
A PROFESSIONAL LAW CORPORATION
3424 Carson Street, Suite 350
Torrance, California 90503
(310) 542-0111 Telephone
(310) 214-7254 Facsimile

Attorneys for Kenneth Dale Franklin,
Sally Franklin, and American Tow and Auto Repairs, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:09-18306-TA |
| HOUSHANG ESHGHI and FARRAH ESFAHANI, | Chapter 7 |
| Debtors. | **OPPOSITION TO DEBTOR'S MOTION TO CONVERT CASE UNDER 11 U.S.C. §§706(a) OR 1112(a); DECLARATIONS IN SUPPORT THEREOF** |
| | Date:  March 2, 2010<br>Time:  11:00 a.m.<br>Ctrm:  5B |

TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES:

Kenneth Dale Franklin, Sally Franklin and American Tow and Auto Repairs, Inc. (collectively "Creditors" or "Movants") hereby submit their Opposition to Debtors' Motion to Convert the Case Under 11 U.S.C. §§706(a) or 1112(a) (the "Opposition"), filed by Houshang Eshighi and Farrah Esfahani (together "Debtors").

///

///

///

I.

**PREFATORY STATEMENT**

Debtors' motion to convert their case to a Chapter 11 should be denied. Debtors do not have an automatic right to convert their case to a Chapter 11 and Debtors have failed to establish that they may be Chapter 11 debtors. However, Debtors cannot be Chapter 11 debtors because there is no income to fund a plan and this is essentially a two-party dispute. Further, Debtors are seeking this conversion in bad faith, and cause exists under 11 U.S.C. §1112 to dismiss the Chapter 11 or to convert to a Chapter 7. Additionally, it is not in the best interest of creditors to convert this case to a Chapter 11.

II.

**STATEMENT OF FACTS**

On or around August 11, 2009 (the "Petition Date"), Debtors filed for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). On or around November 16, 2009, the Court granted Creditors relief from the automatic stay to proceed in a non-bankruptcy forum. On or around January 20, 2010, the Chapter 7 Trustee filed a Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. §542(a) on emergency notice (the "Turnover Motion"). On or around January 21, 2010, the court set the hearing on the Turnover Motion for January 27, 2010. On or around January 25, 2010, the Debtors filed a Notice of Motion and Debtors' Motion to Convert the Case under §706(a) (the "Conversion Motion").

III.

**AUTHORITY**

11 U.S.C. §§ 706(a) and (d) of the Bankruptcy Code provide:

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12 or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

(d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

The Supreme Court has held that the right of a debtor to convert a case under §706 is not

absolute and that a Court has authority under 11 U.S.C. §105(a) to deny a motion to convert if the debtor has demonstrated that he is not entitled to the relief available to the typical debtor. See *Marrama v. Citizens Bank of Massachusetts, et al.*, 549 U.S. 365 (U.S. 2007). Further, a Court may deny a motion to convert if the debtor may not be a debtor under another chapter or if conversion to another chapter would be futile. Thus, no automatic right to conversion exists and this Court has authority to deny the Debtors Motion.

### A. The Debtors Cannot Sustain Themselves as Chapter 11 Debtors.

While the Bankruptcy Code does not enumerate specific requirements to be a Chapter 11 debtor, it appears here, the Debtors are unable to sustain themselves as Chapter 11 Debtors. If the Debtors' case were converted cause would exist under §1112 of the Bankruptcy Code for dismissal or conversion back to a Chapter 11. Additionally, the Debtors cannot meet the good faith filing requirement imposed by the Ninth Circuit. Further, it appears that it would be in the best interest of creditors for the Debtors to remain in a Chapter 7 bankruptcy. Therefore, the Debtors' Conversion Motion should be denied.

#### 1. Cause Under Section 1112- Inability to Confirm a Plan.

The Debtors do not qualify for a Chapter 11 under §1112, which provides that a Chapter 11 proceeding may be dismissed or converted to a Chapter 7 proceeding "for cause". Absent unusual circumstances specifically identified to the Court which demonstrate that dismissal or conversion is not in the best interest of the creditors of the estate, the Court should grant a request to dismiss or convert upon a showing of cause. *11 U.S.C. §1112*. A bankruptcy court may dismiss a Chapter 11 petition for want of good faith, but only with great caution and upon supportable findings both of objective futility of any possible reorganization and subjective bad faith of petitioner in invoking bankruptcy protection. *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989) (internal citations omitted). "When deciding between dismissal and conversion under 11 U.S.C. § 1112(b), 'the court must consider the interests of all of the creditors.'" *Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens)*, 552 F.3d 958 (9th Cir. 2009) (internal citations omitted).

§ 1112 contains a lengthy definition of the term "cause" which was substantially expanded by BAPCPA. Here, there appears to be at least three (3) bases for finding cause. First, there is an unreasonable likelihood of rehabilitation or reorganization, further explained below. Second the bad faith nature of filing a Chapter 11 (further explained *infra § III.A.2*) and third, it is not in the best interest of the creditors (further explained *infra § III.A.3*).

Debtors represent in the declaration of Houshang Esfahani in support of the Conversion Motion that their monthly income has increased. However, Debtors failed to provide any evidence of the alleged increase of income. Further, examination of Debtors' Schedules I and J, reflect that Debtors have net monthly income of *negative $2,340.00*. True and correct copies of the Debtors' Schedules I and J are attached hereto as Exhibit "A". Further, the Conversion Motion alleges that the Debtors believe that they can "catch up" on past due debts through a payment plan under a Chapter 11 (Motion page 2, lines 13-14). However, the Conversion Motion completely ignores the fact that Debtors lack sufficient income to fund a plan of reorganization and lack any reasonable likelihood of rehabilitation. As stated on their Schedules, Debtors monthly expenses currently exceed their monthly income resulting in a negative monthly net income and Debtors appear to have no money to fund a plan of reorganization.

Debtors' propose to pay back over one million dollars of unsecured debt on a negative income. This is simply unrealistic; hence no reasonable likelihood of rehabilitation exists. Accordingly, cause exists to dismiss or convert the Debtors as Chapter 11 debtors. Therefore, the Debtors may not be Chapter 11 debtors and the Conversion Motion should be denied.

**2. The Debtors cannot meet the good faith filing requirement imposed by the Ninth Circuit.**

"The Ninth Circuit has held that lack of good faith in filing a Chapter 11 Petition establishes grounds for dismissal." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir. 1994) (internal citations omitted). The test of good faith depends on many different factors. *Id.* In the alternative, bad faith is determined on a case by case basis, considering all relevant factors, requiring an in-depth inquiry of the debtor's motives for instituting the case and to determine

whether such purpose is consistent with a Chapter 11 bankruptcy. *See In re Martin*, 51 B.R. 490 (Bankr. M.D. Fla. 1985). The Ninth Circuit considers both frivolousness *and* improper purpose on a sliding scale to determine whether a bankruptcy was filed in bad faith, giving cause for dismissal under §1112(b). *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir. 1994) (*emphasis added*).

The Ninth Circuit has cited the Sixth Circuit in *In re Trident* for factors meaningful in evaluating an organizational debtor's good faith, although no single factors is dispositive. *SEC v. Whitworth Energy Resources, Ltd.*, 2000 U.S. App. LEXIS 31237 (9th Cir. 2000). *In re Trident*, set forth the following factors to determine whether the debtor filed a Chapter 11 in good faith:

    i. The debtors has one asset;
    ii. The pre-petition conduct of the debtor has been improper;
    iii. There are only a few unsecured creditors;
    iv. The debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;
    v. The debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;
    vi. The filing of the petition effectively allows the debtor to evade court orders;
    vii. The debtor has no ongoing business or employees; and
    viii. The lack of possibility of reorganization.

*Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co., (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127 (6th Cir. 1995). Other facts have been held to be indicative of a bad faith filing, such as where the bankruptcy amounts to "essentially a two-party dispute", or there are no employees, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments.[1] Although not an exhaustive list, all factors listed above are indicative of the type of behavior that demonstrates the lack of good faith (or bad faith).

///

///

///

---

[1] *See In re S. Paul Self Storage Ltd., P'ship*, 185 B.R. 580 (B.A.P. 9th Cir. 1995); *see also In re Shar*, 253 B.R. 621 (Bankr. D.N.J. 1999), *In re Boulders on the river*, 164 B.R. 99 (B.A.P. 9th Cir. 1994), and *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984)

### i. The debtors' asset base.

Here, although the Debtors have more than one asset, substantially all their assets are encumbered by liens, or protected by exemptions. Debtors' Schedules list the following assets encumbered by the following liens or protected by the following exemptions:[2]

| Description of Asset | Value | Liens/exemptions | Equity |
|---|---|---|---|
| 2491 Nellie Gail Rd. Laguna Hills, CA 92653 | $1,030,000 | Countrywide: $937,000 Bank of America: $275,000 | ($181,500) |
| 27671 Gold Dust Lane Laguna Hills, CA 92653 | $1,200,000 | Wells Fargo: $996,000 Wells Fargo: $198,000 | $6,000 |
| 2004 Ford F-150 | $6,000 | CCP §703.140(b)(5): $6,000 | $0.00 |
| 2007 Toyota Tacoma | $10,000 | Toyota Motor Credit: $2,900 | $7,100 |
| 2008 Toyota Rav-4 | $15,000 | Toyota Motor Credit: $16,585 | ($1,585) |
| 2002 S430 Benz | $8,000 | CCP §703.140(b)(5): $8,000 | $0.00 |

True and correct copies of the Debtors' Schedules A, B, C, and D are attached hereto as Exhibit "B". Therefore, Debtors have few assets that render themselves to a Chapter 11 reorganization.

### ii. The pre-petition conduct of the debtor has been improper.

1. Debtors' improper pre-petition conduct, is what prompted Kenneth Dale Franklin and Sally Franklin (together the "Franklins") to initiate the state court action against the Debtors. On or around November 28, 2006, the Franklins filed a verified complaint for Involuntary Dissolution of the Corporation, in the Superior Court of California, County of Orange, Case No.: 06CC12388 (the "State Court Action"). On or around January 12, 2007, the Franklins filed their First Amended Verified Complaint For: (1) Accounting; (2) Involuntary Dissolution; (3) Improper Distributions; (4) Fraud; and (5) Breach of Fiduciary Duty (the "FAC"). The Franklins also added to the FAC as a named defendant and Debtor, Amir Esfahani. On or around January 29, 2008, Debtor, Farrah Esfahani was added as the DOE 1 defendant to the FAC. The parties stipulated to have the first cause of action for accounting tried by reference pursuant to California Code of Civil Procedure section 632. Unfortunately, the Debtor's pre-petition conduct continued during the trial by reference. Specifically, the Debtors engaged in a pattern of delay, including failing to produce corporate records, failing to cooperate with the expert

---

[2] All values and amounts were taken from the Debtors' Schedules.

conducting the forensic accounting, and changing his representation several times (ultimately using a total of four different law firms) with a corresponding request for continuance each time. These actions resulted in what should have been an expedited procedure taking nearly fifteen months to complete. On or around March 20, 2009, the referee prepared a Referee's Statement of Decision which was filed with the Superior Court on April 21, 2009. On or around March 20, 2009, the referee prepared a Referee's Statement of Decision which was filed with the Superior Court on April 21, 2009. A true and correct copy of the Referee's Statement of Decision is attached hereto as Exhibit "C". The Referee's Statement of Decision sets forth the following: that Debtors failed to timely produce documents to the referee; Debtor, Mr. Esfahani, improperly removed $1,363,756.00 from the corporation, American Tow and Auto Repairs, Inc.; and an equalization payment is owed to Dale Franklin by Mr. Esfahani in the amount of $681,878.00. As the result of the Debtor having unsuccessfully objected to the Referee's statement of decision in the State Court action it is now final in the State Court Action. Here, the Debtors have improperly taken money from a company and have been unnecessarily uncooperative in the State Court Action. Thus, the Debtors' pre-petition conduct has been improper.

### iii. There are only a few unsecured creditors.

Here, while there are approximately thirteen (13) unsecured creditors, 86% of Debtors' unsecured debt is owed to one creditor, the Movants. Debtors' Schedule F represents that their total unsecured debt is $1,161,899.00, and Movants are owed approximately $1,000,000.00. A true and correct copy of the Debtors Schedule F is attached hereto as Exhibit "D". Hence this is essentially a two party dispute as the amounts owed to other creditors are de minimus.

### iv. The debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court.

Not applicable.

///

///

///

> **v.    The debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford.**

Not Applicable. An order granting Creditors' Motion for Relief from Stay to proceed in the State Court Action was entered by this Court on November 16, 2009.

> **vi.    The filing of the petition effectively allows the debtor to evade court orders.**

Not applicable.

> **vii.    The debtor has no ongoing business or employees.**

Here, the Debtors are individuals. They have no ongoing business or employees.

> **viii.    The lack of possibility of reorganization.**

As stated previously, Debtors have little or no possibility of reorganization because Debtors have no income to fund a plan of reorganization.

It appears the factors set forth in *In re Trident*, fall in the Movants favor: (1) the debtors have few unencumbered or non-exempt assets; (2) they have engaged in improper pre-petition behavior; (3) there is essentially only one major unsecured creditor; (3) the Debtors have no ongoing business or employees; and (4) the Debtors lack any possibility of reorganization.

Additionally, it appears that the Debtors' request to convert their bankruptcy is both frivolous and for an improper purpose. Debtors' motion to convert is frivolous because the Debtors lack income to fund a plan of reorganization in a Chapter 11, and therefore cannot be Chapter 11 debtors. Debtors' motion to convert is also brought for an improper purpose. Debtors have a record of refusing to cooperate with the Chapter 7 Trustee in producing requested information and regarding the sale of real property located at 27671 Gold Dust Lane, Laguna Hills, CA 92653 (the "Premises").[3] Debtors' Motion comes on the eve of the Chapter 7 Trustee's Turnover Motion to force turnover of the Premises. It appears that Debtors' sole

---

[3] A true and correct copy of the Declaration of Clarence Yoshikane in support of the Chapter 7 Trustee's Turnover Motion is attached hereto as Exhibit "E". This declaration sets forth how uncooperative Debtors have been with regard to a sale of the Premises.

1  purpose in bringing the Motion is to prevent the Chapter 7 Trustee from performing her duties
2  and administering the bankruptcy estate; more specifically, to prevent the Chapter 7 Trustee from
3  selling the Premises. Therefore, because the Debtors have no possibility of reorganization and
4  are attempting to thwart the efforts of the Chapter 7 Trustee their Conversion Motion is both
5  frivolous and brought for an improper purpose.
6        Once a movant establishes a genuine concern regarding the lack of the debtor's good
7  faith, the debtor bears the burden of proving good faith by a preponderance of the evidence. *Id.*
8  and *Fryer/McElhancy Joint Venture v. S&S/Moab Enters (In re S&S/Moab Enters)*, 1996 U.S.
9  App. LEXIS (9th Cir. 1996). Here, Movants have established a genuine concern regarding the
10 Debtors' lack of good faith and shown that Debtors are in fact acting in bad faith seeking this
11 conversion. Thus, the Conversion Motion should be denied because Debtors have not acted in
12 good faith.
13     **3. Conversion to a Chapter 11 is Not in the Best Interest of Creditors.**
14       A Motion to Dismiss or Convert may be denied because it is not in the best interest of
15 other creditors. *See, Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens)*, 552 F.3d 958 (9th Cir.
16 2009) (internal citations omitted) (Court noted that conversion of case to a Chapter 7 would deny
17 other creditors access to the Debtors' future income). Where dismissal will harm creditors on
18 other basis, courts have denied dismissal or conversion. *See, e.g., In re Western Pac. Airlines*,
19 218 B.R. 590 (Bankr. D. Colo. 1998) (Even though "cause" for dismissal or conversion pursuant
20 to 11 USCS § 1112(b) was established by showing that debtor airline which had ceased
21 operations lacked ability to reorganize and had experienced negative cash flow since filing of
22 case and that there was continuing diminution of estate assets, dismissal or conversion at this
23 point in time would not result in benefit to estate or any other party so that conversion motion
24 would be denied where unsecured creditors and equity holders would receive no distribution
25 whether case was in Chapter 11, in Chapter 7, or under state law and court did not want to
26 undermine trust of postpetition, superpriority lenders in instant case or set precedent which
27 would dissuade or preclude future lender from extending credit to a debtor in possession).
28

1    Here, it would not be in the best interest of the creditors for the case to be converted to a
Chapter 11 proceeding. The Chapter 7 Trustee is already familiar with the Debtors' case and
estate. The Chapter 7 Trustee has employed counsel, with court approval, to effectively
administer the few remaining assets of the estate. Conversion this late in the case (over five (5)
months after the Petition Date) would not be in the best interest of creditors. Conversion to a
Chapter 11 would unnecessarily increase administrative costs, decreasing the pro rata share
available to the unsecured creditors. The proposed Chapter 11 Debtors and Debtors in
Possession would have to employ new counsel who would incur more administrative fees in
becoming familiar with the case. As Chapter 11 Debtors, the estate would also have to make
quarterly payments as required by the Office of United States Trustee, further decreasing the pro
rata share received by creditors. Notwithstanding the foregoing, even if the conversion would
not decrease the pro rata share received by creditors, Debtors have not produced any evidence
that creditors would receive a larger distribution in a Chapter 11 than in a Chapter 7.

Further, Debtors' lack of cooperation with the Chapter 7 Trustee would indicate that
Debtors are unfit and unable to act as Debtors in Possession and the bankruptcy estate would be
mismanaged and harmed, thus injuring the creditors. Because it appears Debtors are unfit to be
Debtors in Possession, Movants would seek Court approval to appoint a Chapter 11 Trustee. If a
Chapter 11 Trustee were to be appointed, it would further unnecessarily increase the
administrative expenses to the estate, thus decreasing the pro rata share available to the creditors.
Therefore, because the Chapter 7 Trustee has already put forth significant time and effort to
effectively administer this estate, and Debtors actions indicate a Chapter 11 Trustee would need
to be appointed, it is in the best interest of the creditors for the Court to deny Debtors'
Conversion Motion.

///
///
///
///

## III.

## CONCLUSION

As indicated from the outset, Debtors have not set forth any evidence to support the Conversion Motion. Conversion of this case is not in the best interest of the creditors. Further, Debtors request for conversion lacks good faith. Accordingly, the Court should deny the Debtors' Conversion Motion.

Dated: February 16, 2010

CLARKSON, GORE & MARSELLA
A Professional Law Corporation

By: /s/ Scott C. Clarkson
Scott C. Clarkson
Eve A. Marsella
Christine M. Fitzgerald
Attorneys for Creditors
Kenneth Dale Franklin, Sally Franklin, and
American Tow and Auto Repairs, Inc.

## DECLARATION OF JOHN S. CLIFFORD

I, John S. Clifford, declare as follows:

1. I am an attorney licensed to practice law in the State of California, and serve as such state litigation counsel to Kenneth Dale Franklin and Sally Franklin in the matter of *Kenneth Dale Franklin and Sally Franklin vs. American Tow and Auto Repair, Inc., Houshang Eshghi Esfahani, and Farrah Esfahani, (and related Counter-Claimants)*, Case No. 06CC12388, pending in the Superior Court of California, County of Orange. The following is personally known to me, save those facts alleged on information and belief, and which facts I believe to be true. I can tell the court that all allegations made by me are either personally known, or the direct result of my review of the evidence and testimony generated in the State court matter, including my review of the books and records maintained by my law office in the ordinary course of business. If called upon as a witness, I could and would competently testify thereto.

2. Houshang Eshghi Esfahani and Farrah Esfahani (together "Debtors") improper pre-petition conduct, is what prompted Kenneth Dale Franklin and Sally Franklin (together the "Franklins") to initiate state the court action against the Debtors.

3. On or around November 28, 2006, the Franklins filed a verified complaint for Involuntary Dissolution of the Corporation, in the Superior Court of California, County of Orange, Case No.: 06CC12388 (the "State Court Action").

4. On or around January 12, 2007, the Franklins filed their First Amended Verified Complaint For: (1) Accounting; (2) Involuntary Dissolution; (3) Improper Distributions; (4) Fraud; and (5) Breach of Fiduciary Duty (the "FAC"). The Franklins also added to the FAC as a named defendant and Debtor, Amir Esfahani.

5. On or around January 29, 2008, Debtor, Farrah Esfahani was added as the DOE 1 defendant to the FAC.

6. The parties stipulated to have the first cause of action for accounting tried by reference pursuant to California Code of Civil Procedure section 632.

7. Unfortunately, the Debtor's pre-petition conduct continued during the trial by

7. Unfortunately, the Debtor's pre-petition conduct continued during the trial by reference. Specifically, the Debtors engaged in a pattern of delay, including failing to produce corporate records, failing to cooperate with the expert conducting the forensic accounting, and changing his representation several times (ultimately using a total of four different law firms) with a corresponding request for continuance each time. These actions resulted in what should have been an expedited procedure taking nearly fifteen months to complete.

8. On or around March 20, 2009, the referee prepared a Referee's Statement of Decision which was filed with the Superior Court on April 21, 2009.

9. A true and correct copy of the Referee's Statement of Decision is attached hereto as Exhibit "C". The Referee's Statement of Decision sets forth the following: that Debtors failed to timely produce documents to the referee; Debtor, Mr. Esfahani, improperly removed $1,363,756.00 from the corporation, American Tow and Auto Repairs, Inc.; and an equalization payment is owed to Dale Franklin by Mr. Esfahani in the amount of $681,878.00. I believe that this Court should be aware that as the result of the Debtors having unsuccessfully objected to the referee's statement of decision in the State Court action it is now final in the State Court Action.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct. Executed this 16th day of February, 2010 in Santa Ana, California.

John S. Clifford

## DECLARATION OF CHRISTINE M. FITZGERALD

I Christine M. Fitzgerald declare and state as follows:

1. I am an attorney at the law firm of Clarkson, Gore & Marsella, APLC ("CGM"), counsel to Kenneth Dale Franklin, Sally Franklin, and American Tow and Auto Repairs, Inc. I have personal knowledge of the foregoing facts or have gained such knowledge from my review of the books and records of CGM, which are maintained, obtained, and created in the ordinary course of business. If called upon to testify to the following facts, I would and could competently testify thereto.

2. On or around August 11, 2009 (the "Petition Date"), Debtors filed for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

3. On or around November 16, 2009, the Court granted Creditors relief from the automatic stay to proceed in a non-bankruptcy forum.

4. On or around January 20, 2010, the Chapter 7 Trustee filed a Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. §542(a) on emergency notice (the "Turnover Motion").

5. On or around January 21, 2010, the court set the hearing on the Turnover Motion for January 27, 2010.

6. On or around January 25, 2010, the Debtors filed a Notice of Motion and Debtors' Motion to Convert the Case under §706(a) (the "Conversion Motion").

7. True and correct copies of the Debtors' Schedules I and J are attached hereto as Exhibit "A".

8. True and correct copies of the Debtors' Schedules A, B, C, and D are attached hereto as Exhibit "B".

9. A true and correct copy of the Debtors Schedule F is attached hereto as Exhibit "D".

///

///

1      10.     A true and correct copy of the Declaration of Clarence Yoshikane in support of the Chapter 7 Trustee's Turnover Motion is attached hereto as Exhibit "E".

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct. Executed this 16th day of February, 2010 in Torrance, California.

_____
Christine M. Fitzgerald